# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 7, 2010 Session

## STATE OF TENNESSEE v. GREGORY D. ROBERTS

**Direct Appeal from the Circuit Court for Fayette County**
**No. 6361     J. Weber McCraw, Judge**

---

**No. W2010-01538-CCA-R3-CD   -   Filed March 30, 2011**

---

The defendant, Gregory D. Roberts, was convicted by a Fayette County jury of illegal voting, a Class D felony, for having intentionally voted in a November 2008 election knowing that he was ineligible to vote due to his felony convictions for infamous crimes. He was subsequently sentenced by the trial court as a Range II offender to four years in the Department of Correction, with the sentence suspended to fifteen days in the county jail with the remainder of the time on supervised probation. The defendant raises essentially three issues on appeal: (1) whether the evidence was sufficient to sustain the conviction; (2) whether the trial court erred by not instructing the jury to disregard a lay witness's testimony regarding similarities in signatures; and (3) whether trial counsel was ineffective for not moving for a directed verdict. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

John W. Leach, Memphis, Tennessee (on appeal); and Leslie Miller, Somerville, Tennessee (at trial), for the appellant, Gregory D. Roberts.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The State's first witness at trial was Debbie Sullivan, the Deputy Administrator of the Fayette County Election Commission, who identified the following items that were subsequently admitted as exhibits one through four in the case: a copy of the defendant's signed voter registration card, dated May 21, 2004; a page from the "voter signature list" from the November 2004 general election, which contained the defendant's signature and preprinted address and social security number; an application to vote from the November 2008 general election, which contained the defendant's hand-printed name, address, and signature; and a page from the voter signature list from the November 2008 general election, which contained the defendant's signature and preprinted address and social security number. Sullivan also identified certified copies of the defendant's February 2008 guilty plea felony convictions in the Shelby County Criminal Court, for which the defendant had been rendered infamous.

Sullivan described election day voting procedure, testifying that an individual completes an application to vote, which contains spaces for his or her name, address, and signature, and then takes it to the voting registrar. The voting registrar, in turn, searches for and identifies the name on the registered voter list, checks the individual's identification, and has the individual sign the voter list. At that point, the registrar places his or her initials on the application to vote, which allows the individual to take the application to the voting machine operator in order to cast a vote. Sullivan testified that the registrar who signed the defendant's 2008 application to vote was Sally Rhodes.

Sally Rhodes, who said she had been serving as a registrar at the Braden precinct for the past four years, identified her initials on the 2008 application to vote form that contained the defendant's purported signature. She testified that she did not recognize the defendant, but the procedure she was trained to follow involved comparing the voter's name and address to the voter list, checking it against the identification the voter produced, which was usually either a voter identification card or a driver's license, and then having the voter sign the voter list before she initialed the application to vote. On cross-examination, she acknowledged that in the November 2008 general election, fifty individuals signed the voter signature list between the time that the defendant's father and mother signed and the time that the defendant's alleged signature appeared on the list.

Thomas Vastrick, who was accepted by the court as an expert in the field of forensic document examination, testified on the defendant's behalf that he had compared the signatures in exhibits three and four to known specimens of the defendant's signature and found differences indicating that they were not in the defendant's handwriting. On cross-examination, he acknowledged that the defendant's signature was complex, which made it theoretically harder to duplicate, and that it was therefore possible that the signatures in exhibits three and four were the defendant's.

Mary Roberts, the defendant's mother, testified that the defendant lived with her and her husband and did not drive because he had no driver's license. She said that on November 4, 2008, she and her husband left the house for the voting precinct sometime between 10:30 and 11:00 a.m. and returned no later than 11:30 a.m. The defendant was asleep in bed when they left and was still in bed when they returned. She said she woke the defendant sometime between 12:00 and 12:30 p.m. and that he remained at home until she drove him to work. On cross-examination, she testified that the defendant was a private person who did not go out much or have many friends. She, therefore, acknowledged that it was highly unlikely that anyone had stolen his identification. She further acknowledged that they had not had any break-ins at their home and that there was no one in the family who harbored any resentment against the defendant.

Thomas Roberts, the defendant's father, corroborated his wife's account of the defendant's having been asleep in bed when he and his wife left for the voting precinct, his having been still asleep when they returned home, and his having remained at home until the early afternoon when Mrs. Roberts drove him to work. On cross-examination, he testified that he and his wife left their truck at home, but not the keys to the vehicle, when they went to the voting precinct. He also acknowledged that the voting precinct was within walking distance of their house.

## ANALYSIS

### I. Sufficiency of the Evidence

The first five issues the defendant raises on appeal amount to a challenge to the sufficiency of the convicting evidence. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant's Class D conviction for illegal voting was based on his violation of Tennessee Code Annotated section 2-19-107, which provides in pertinent part that a person commits the offense who, "[i]ntentionally and knowing that such person is not entitled to, registers or votes in any manner or attempts to register or vote in any manner where or when such person is not entitled to vote under this title, including voting more than once in the same election." Tenn. Code Ann. § 2-19-107(1) (Supp. 2008).

The defendant does not contest his ineligibility to vote in the November 2008 election or his awareness of that ineligibility. Instead, he argues that the State failed to prove beyond a reasonable doubt that he was the individual who voted under his name in that election. In support, he cites the alibi testimony of his parents, the inability of the State's witnesses to identify him as the individual who voted, and the opinion testimony of his expert witness that he was not the individual who signed his name to the application to vote and signature page in that election. The State responds by arguing that there was sufficient evidence from which the jury could infer the defendant's guilt of the offense. We agree with the State.

The State's witnesses, although unable to identify the defendant as the individual who voted in the 2008 election, described the system of checks and balances designed to assure accuracy in the voting process and identified the voting documents that were introduced as exhibits in the case, which included the 2004 documents containing the defendant's undisputed signatures and the 2008 documents that the defendant claims he did not sign. The jury was under no obligation to accept the testimony of the defendant's handwriting expert and could have reasonably concluded, based on its own comparison, that the disputed signatures were in the defendant's handwriting. See State v. William S. Dedmon, No.

01C01-9506-CC-00209, 1996 WL 518274, at \*4 (Tenn. Crim. App. Sept. 13, 1996) (citing Tennessee Rule of Evidence 901(b)(3) to support conclusion that rational trier of fact could have reasonably concluded, based on comparison of signatures, that the defendant had forged signature to check). The jury was also under no obligation to accept the alibi testimony of the defendant's parents. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction for illegal voting.

## II.  Failure to Instruct Jury to Disregard Witness's Testimony

The defendant contends that the trial court committed reversible error by not instructing the jury to disregard Debbie Sullivan's testimony that she saw similarities in the undisputed and disputed signatures of the defendant. Specifically, the defendant argues that the trial court's failure to instruct the jury that it "must disregard" Sullivan's testimony "allowed the Jury to give weight to totally inadmissable lay opinion in the face of opinion testimony from a[n] eminently qualified expert, and is unquestionably the basis of the verdict." The State responds by arguing, *inter alia*, that the defendant has waived appellate review of this issue by his failure to include in the record either discussions about the proposed jury charge, or the charge itself. We agree with the State.

The trial transcript reveals that the prosecutor asked Sullivan if she had noticed similarities in the signatures. When she replied that she had, the prosecutor asked her to describe the similarities. At that point, the defendant objected on the basis that it called for improper opinion testimony. The trial court allowed the State to attempt to show that Sullivan was qualified to offer her lay opinion on the topic, but ultimately sustained the defendant's objection to the testimony. The defendant did not request a curative instruction at that time, and there is nothing in the record to show what, if any, curative instruction he proposed be included in the jury charge at the end of the proof. We, therefore, conclude that he is not entitled to relief on the basis of this claim. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

## III.  Ineffective Assistance of Counsel

As his last issue, the defendant contends that he was deprived of his rights to a fair trial, due process of law, and the effective assistance of counsel by trial counsel's failure to move for a directed verdict at the close of the proof. This court has repeatedly warned that "the practice of raising ineffective assistance of counsel claims on direct appeal is 'fraught with peril' since it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001)

(citations omitted). Although the defendant raised the issue of ineffective assistance of counsel in his amended motion for new trial, the trial court made no findings of fact or conclusions of law in its order denying the motion for new trial. Moreover, since the transcript of the motion for new trial hearing is not included in the record, we have no way of knowing whether the defendant presented any evidence at the hearing on his ineffective assistance of counsel claim. As such, we decline to consider this issue. See State v. Michael E. Lones, No. E2005-02777-CCA-R3-CD, 2007 WL 674630, at *5 (Tenn. Crim. App. Mar. 6, 2007) (concluding it would be inappropriate to address defendant's claim of ineffective assistance of counsel on direct appeal when no evidentiary hearing was held and trial court had no opportunity to make findings of fact), perm. to appeal denied (Tenn. Aug. 13, 2007).

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE